Olive G. Gardner  
     vs.      } Eq. No. 12094.  
Charles Dexter, et al.

### DECISION.

February 8, 1934.

WALSH, J. This is a bill in equity brought against the executor of the will of Ida Webster, late of Foster, deceased, and the beneficiaries under the terms of said will to have the estate of Ida Webster impressed with a trust arising out of an agreement alleged to have been made by the testatrix with complainant.

Complainant claims that for many years prior to 1923 she was on terms of intimacy and friendship with Ida Webster; that in 1923, the complainant and her husband were planning to move from Clayville to Providence; that Mrs. Webster, learning of the contemplated departure of complainant from Clayville, induced complainant to give up said project and to remain in Clayville, to the great inconvenience of complainant and her husband, upon the promise of said Ida Webster that if the complainant would do so and would continue to live across the street from said Ida Webster and would do the housework, run errands for and visit said Ida Webster as she had been accustomed to do, during the remainder of the life of said Ida Webster, she, said Ida Webster, would give complainant by will her homestead and contents. Mrs. Webster at the time was aged, a widow and childless.

Complainant further claims that she fully performed in good faith on her part the agreement with Mrs. Webster until Mrs. Webster's death in January 1933; that Mrs. Webster in disregard of her contract with complainant executed a will which has been admitted to probate in the Town of Foster, in which will she gave the property to respondents, Charles Dexter and wife..

The law in Rhode Island in conformity with the weight of authority is that a person may make an agreement, which will be valid if supported by legal consideration, to dispose of his property in a particular way by will, and that such a contract may be enforced in equity after his decease against his heirs, devisees or personal representative.

> *Spencer* vs. *Spencer*, 25 R. I. 239.

The claim of such a contract will be regarded with suspicion by a court of equity and the same will not be enforced against the estate of a decedent unless established by clear and convincing evidence.

> *Spencer* vs. *Spencer*, 26 R. I. 237;  
> *Messier* vs. *Rainville*, 30 R. I. 161.

Was there evidence presented at the present hearing which clearly and convincingly supported the making of the alleged agreement between complainant and Mrs. Webster? Outside of complainant, her husband, her father and her son, who are manifestly interested witnesses, we have (1) Phoebe J. Curtis, Mrs. Webster's husband's niece, who testified that Mrs. Webster told her in January 1931 that she was going to make a new will, that the place was going to be Olive's (the complainant) for what Olive has done for her; (2) Mary E. Gryce, niece of Mrs. Webster, who testified that in the fall of 1932, Mrs. Webster had told her on numerous occasions that she could not pay Olive in money for what she had done for her and that she hoped Olive would have the house after she had gone; (3) Samuel Gardenson, who testified that Mrs. Webster told him she was going to leave her property to Mrs. Gardner; (4) Mrs. Ella M. Goodnough, who testified that in 1930 Mrs. Webster had told her that she had no relatives she cared for and she only liked Mrs. Gardner and that all she had "property and everything" would belong to Mrs. Gardner after her decease; (5) Mrs. Mabel A. Wells,

who testified that Mrs. Webster had told her that she loved Olive Gardner and that she was going to leave her property to Olive Gardner, after she was gone; (6) Nellie Farrell, who testified that Mrs. Webster in August, 1931, had said to her, "if anything happens to me, Olive is entitled to my home and everything in it"; (7) Louis A. Card, who testified that Mrs. Webster in 1926 told him, "Mrs. Gardner is to have my home here"; (8) Walter E. Comstock, who testified that Mrs. Webster had told him, "When I get through with this place, it is Olive's" (9) Willard H. Card, who testified that Mrs. Webster had told him in the summer of 1930 in the presence of Mrs. Gardner, "When I'm through with it, you (meaning Mrs. Gardner) can paint it any color you want. It's your'n", and (10) Arnold C. Bennett, who testified that in September 1932, Mrs. Webster had told him, "When I'm through, Mrs. Gardner is going to have my home. She has been awfully good to me."

In the testimony of all of these witnesses, outside of that of Mrs. Gardner and her relatives, there are no positive statement tending to prove the existence of an *agreement* by Mrs. Webster to transfer her property to complainant. The evidence of the existence of such an agreement is circumstantial and inferential.

The evidence introduced by respondents consists of (1) the will of Ida Webster which was admitted to probate on March 4, 1933, by the Probate Court of the Town of Foster. In this will the complainant is left the sum of $100. This will was drawn by Alfred G. Chaffee, Esq., for Mrs. Webster in September 1932. (2) A will dated April 22, 1932, executed by Ida Webster before Daniel H. Remington, Town Clerk, in which complainant is left the sum of $100; (3) Mrs. Carlow, who testified that Mrs. Gardner tried to induce her to testify falsely

in the present case; (4) Mrs. Dexter, one of respondents, whose testimony did not appeal to us because of her very evident hostility to other witnesses; (5) Sarah J. Chatterton, whose testimony appealed to us as being honest and truthful in every particular and who testified as follows: that Mrs. Gardner did come into Mrs. Webster's house and performed many household duties for Mrs. Webster; that Mrs. Gardner and Mrs. Webster were most friendly; that she learned this when she was in Mrs. Webster's house in her capacity of practical nurse; that she and Mrs. Webster were practical nurses and had shared the nursing requirements in Clayville for many years; that Mrs. Webster was a careful woman and paid her bills promptly; that she saw Mrs. Webster pay Mrs. Gardner for her services on at least one occasion; that Mrs. Webster told her she had paid Mrs. Gardner for everything Mrs. Gardner was asked to do for her; that Mrs. Webster and herself attended Home Mission Society and Grange Meetings together; that she went with Mrs. Webster when the will of April 22, 1932, was arranged; that Mrs. Webster felt kindly toward Mr. and Mrs. Dexter and that the latter called frequently upon Mrs. Webster during the last year of her life; that Mrs. Webster expressed to her her discomfort at the presence of the Gryces in Mrs. Webster's home; that she never saw the Cards or Nellie Farrell in Mrs. Webster's house; that Mrs. Wells, another of complainant's witnesses, had visited her house in December 1933 and intimated that she was guilty of contempt of court for her failure to appear in court on the day this case was assigned for hearing in December 1933 but was not reached for trial; that on that visit Mrs. Wells had told her that if Mrs. Gardner lost this case, Mrs. Gardner would put in such a large bill for services against

the estate, that Mrs. Chatterton would lose all the residuary estate given to her under the will of Ida Webster; that Mrs. Webster never mentioned to her the existence of any agreement to give Mrs. Gardner either the house or contents or both. Many other details in her testimony convinced us that she was telling the truth and this was particularly evident in her statements given · during cross-examination; (6) Mrs. Eleno Rathbun, a cultured woman who was active in social and religious work in the village, who testified that Mrs. Webster told her that she had paid Mrs. Gardner for her services, particularly vacuum cleaning; that Mrs. Webster was a woman who met her obligations promptly and carried out her promises; (7) Alfred G. Chaffee, testified that Mrs. Webster had told him at the time of making her last will that she feared that the Gardners were after her money and that their friendship was more' pretended than real.

Giving careful consideration to the evidence introduced on both sides and having in mind the appearance and conduct of the witnesses on the stand, we cannot say that an agreement between the complainant and Mrs. Webster, whereby the latter was to leave her homestead and contents to complainant at her decease, has been established by clear and convincing evidence. We rather feel that the evidence shows the contrary.

Decision for respondents.

For complainant: William C. H. Brand.

For respondents: Alfred G. Chaffee.